Argued March 4, affirmed May 1, 1975

B. C. ZIEGLER AND COMPANY, *Respondent, v.*
PORTLAND SANITARIUM AND BENEVOLENT
ASSOCIATION, dba PORTLAND ADVENTIST
HOSPITAL, *Appellant.*

534 P2d 980

*Christopher P. Thomas,* Portland, argued the cause for appellant. With him on the brief were Kell, Alterman, Runstein & Thomas and Clifford B. Alterman, Portland.

*Clifford N. Carlsen, Jr.,* Portland, argued the cause for respondent. With him on the brief were Miller, Anderson, Nash, Yerke & Wiener and J. Franklin Cable, Portland.

O'CONNELL, C. J.

Plaintiff seeks a declaration that the Oregon usury laws (ORS Chapter 82) are not applicable to a sale of defendant's bonds pursuant to an agreement entered into between plaintiff and defendant. The trial court entered a judgment declaring, in effect, that the transaction was not usurious. Defendant appeals. We affirm.

Defendant is a non-profit corporation which is in the process of constructing and equipping a new hospital and medical office at an estimated cost of $22 million. Plaintiff, a Wisconsin corporation, is engaged in the business of institutional financing. In January of 1972, plaintiff and defendant arranged for a loan of $9 million by plaintiff to defendant for the project, the cost of which was then estimated at $10 million. The funds were to be obtained by is-

suance of bonds under an indenture secured by a first mortgage on all of defendant's hospital property, including the new hospital. The January 1972 agreement was embodied in a letter of intent which provided that the interest rate, underwriting fee, loan maturity date, and prepayment terms would be set at the time of the issuance of the bonds. In addition to its underwriting fee, plaintiff was to receive a fee of one percent of the principal amount of the bonds for financial and other consulting services. The letter of intent also authorized defendant to rely on plaintiff for interim construction loans until the bonds were issued.

Over the next two years the estimated cost of the project increased. After some interim modifications, plaintiff increased the authorized maximum credit to $10 million on May 29, 1974. Throughout these two years the parties contemplated that the bonds would be issued under a "dealer underwriting" which would entail the sale of the bonds directly to plaintiff on terms which would allow a resale of the entire issue at face value in the bond market. Under such an arrangement, plaintiff as the dealer would have been obligated to purchase the entire issue whether they could be resold or not. Both parties desired this type of underwriting. Plaintiff was unable, however, to obtain a satisfactory opinion of legal counsel that the sale of bonds under a dealer underwriting with a 9½ percent interest rate and a 3½ percent underwriting fee would not be usurious under ORS 82.010.[1]

---

[1] ORS 82.010 provides:

"(1) The legal rate of interest is six percent per annum and is payable on:

"(a) All moneys after they become due; but open accounts bear interest from the date of the last item thereof.

"(b) Judgments and decrees for the payment of money from the date of the entry thereof unless some other date is specified therein, except that those upon contracts bearing

Therefore, on August 6, 1974, plaintiff suggested and defendant agreed that the prior arrangements be terminated. Plaintiff returned to defendant the one percent consulting fee which it had received pursuant to the letter of intent agreement. On August 12th, a new letter of intent was sent by defendant and accepted by plaintiff, which provided that $19 million would be raised by a public offering of defendant's first mortgage bonds. This was to be accomplished by stages, the first of which would be a $6 million issue at 8¾-9½ interest. The issue was to be underwritten by plaintiff on an agency underwriting basis for a fee of 4½ percent of the principal amount of bonds sold. Under the agency underwriting, plaintiff, as defendant's agent, was obligated to use its best efforts to sell the bonds for defendant, but plaintiff was not obligated to purchase any of the bonds. The 4½ percent fee was subject to the limitation that plaintiff was not to receive any fee which would render the transaction usurious and the fee was to be paid only upon declaration that the fee was not usurious. The letter also stated that plaintiff and defendant preferred that

---

more than six percent interest and not exceeding the maximum rate, bear the same rate of interest as borne by such contracts.

"(c) Money received to the use of another and retained beyond a reasonable time without the owner's express or implied consent.

"(d) Money due upon the settlement of matured accounts from the day the balance is ascertained.

"(e) Money due or to become due where there is a contract to pay interest and no rate specified.

"(2) But on contracts interest up to a maximum rate of 10 percent per annum may be charged upon express agreement of the parties.

"(3) Except as provided in subsection (5) of this section, the limitations of this section shall not apply to any contract or obligation for which a domestic or foreign corporation is the obligor, and any domestic or foreign corporation by agreement in writing and not otherwise may agree to pay any rate of interest not exceeding 12 percent per annum on such

the remaining $13 million in bonds be sold on a dealer underwriting basis if possible.

On August 15, 1974, the parties executed a "Sales Agency Agreement" to effect the letter of intent. Shortly thereafter, plaintiff sold $5,167,000 of defendant's bonds at 9½ percent interest to more than 1,700 investors.

The trial court, after hearing the case on the basis of the pleadings and stipulated facts, ruled (1) that the sale of bonds was exempt from ORS Chapter 82 because it was a sale of securities,[2] and (2) that, in any event, the commission owing plaintiff could not be considered interest.

■ We agree with the latter conclusion and need not, therefore, reach the question of whether the sale of the bonds was exempt under ORS 82.120(4). The contract between the parties requires plaintiff to serve as defendant's agent for the sale of bonds to others. Plaintiff is not obligated to purchase any of the bonds. The transaction, therefore, is not a loan but rather creates an agency under which the 4½ percent agreed to be paid to plaintiff is for services and does not

contract or obligation as the corporation may determine. The defense or claim of usury by a corporation, or anyone acting in its behalf, in any action or proceeding arising out of a contract or obligation that meets the requirements of this subsection is prohibited.

"(4) Except as provided in subsection (5) of this section, the limitations of this section shall not apply to any contract or obligation in an amount in excess of $50,000, and the parties to such contract or obligation may agree in writing to the payment of interest at a rate in excess of those set forth in subsections (1), (2) or (3) of this section.

"(5) Subsections (3) and (4) of this section do not apply to any charitable, religious or other nonprofit corporation and any such nonprofit corporation is not prohibited from interposing or pleading the defense of usury in any action or proceeding."

[2] ORS 82.120(4) provides: "This chapter does not apply to bona fide sales or resales of securities or commercial paper."

constitute interest. Therefore, the only interest even arguably subject to ORS 82.010(2) is the 9½ percent on the bonds themselves, which is within the ten percent maximum allowed by ORS 82.010. Therefore, ORS 82.110(2), which includes within the definition of "interest" certain fees charged by the *lender,* his agent, or broker, *is not applicable.*

Defendant argues that although the final transaction entered into in 1974 was in form an agency arrangement (and if entered into initially wouldn ot have been usurious), it was in substance the same kind of arrangement as the one first proposed in 1972 which was a loan transaction and subject to the usury statutes. This argument is without merit. The intent of the parties in entering into the first agreement and their subsequent decision to change the form of the agreement to circumvent the usury laws is immaterial if, as we hold, the subsequent agreement of 1974 in fact created only a principal and agency relationship rather than a loan. Although one may question the efficacy of usury laws which can be so readily circumvented by simply rearranging the legal status of the underwriter, the law permits the parties to decide which legal relationship they want to adopt even if the choice is made to avoid the proscription of a statute.

The decree of the trial court is affirmed.